CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

September 03, 2024
LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | Case Nos. 5:19-cr-00019 |
| ) | |
| NIKOLAI FREDRICK ) | |
| HALL-ANDUJAR, ) | |
| ) | |
| ) | By: Michael F. Urbanski |
| Defendant ) | Senior United States District Judge |

## MEMORANDUM OPINION

This matter is before the court on defendant Nikolai Fredrick Hall-Andujar's pro se motion for early termination of supervised release. ECF No. 61. For the reasons stated below, the court **DENIES without prejudice** Hall-Andujar's motion.

On May 7, 2019, Hall-Andujar was indicted on one count of conspiracy to distribute and possess with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. Indictment, ECF No. 20. Hall-Andujar pled guilty pursuant to a plea agreement. ECF No. 41. On June 5, 2020, the court sentenced Hall-Andujar to a term of 46 months, to be followed by a 4-year term of supervised release. J., ECF No. 51. Hall-Andujar was released from custody to begin serving his term of supervised release on or about July 15, 2021, and has now served more than 3 years of his 4-year term of supervised release. Mot., ECF No. 61.

In his motion for early termination of supervised release, Hall-Andjuar states that he has been in complete compliance with the terms of supervised release, has remained employed, and has stayed out of trouble. He said that the birth of his son in January 2024 has been the greatest blessing of his life and he would like to be released from supervision so that he can

travel with the child. He also said that he would like to be able to celebrate with family and friends at venues that serve alcohol but that he is restricted from doing so by the terms of supervision. Hall-Andjuar attends a methadone clinic as part of drug treatment and also goes to group therapy and works out at a gym.

The court sought input from the United States Probation Officer who supervises Hall-Andujar. The officer advised that Hall-Andujar was released from custody in 2021 and initially went to New York but returned to the Western District of Virginia in January 2023. He tested positive for THC in February 2023, but has otherwise been compliant with the terms of supervision. He has maintained employment, although he has had several different jobs since he has been in this district. He and his girlfriend were living in Covington, Virginia and she recently had a child.

The probation officer subsequently advised that Hall-Andujar's girlfriend had called the probation officer and reported that Hall-Andujar had been mentally abusive to her, threw her in a closet and threatened to kill her. The girlfriend called the police, who responded, but told her she did not have enough marks on her body for the police to act.

The probation officer stated that he met with Hall-Andujar who described the incident as a misunderstanding and reported that no charges were filed. Hall-Andujar has since moved to Roanoke from Covington and is seeking employment. Because no charges were filed, the probation officer remains unopposed to early termination for Hall-Andujar.

The government acknowledges that Hall-Andujar has mostly done well on supervised release but opposes early termination because of the recent incident with his girlfriend. The

2

government also expressed concern about Hall-Andujar's recent move to Roanoke because it is unclear what ties or support network he has in Roanoke. Resp. ECF No. 64.

The government pointed out that the conditions of supervised release by which Hall-Andujar must abide do not prohibit him from going to venues that serve alcohol. J., ECF No. 51 at 3–4. Nor is he prohibited from traveling, although he must seek permission from the court or his probation officer before leaving the Western District of Virginia. Id. at 4.

Pursuant to 18 U.S.C. § 3583(e), a court may, after considering the factors set forth in § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7), terminate a period of supervised release at any time after the expiration of one year of supervised release if it is satisfied that such action is warranted by the conduct of the defendant and the interest of justice. The following factors are to be considered: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the United States Sentencing Guidelines; (4) any pertinent policy statement issued by the United States Sentencing Commission; (5) the need to avoid unwarranted sentencing disparities among defendants; and (6) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

Courts have discretion to grant early termination of supervised release, even when the conditions for termination are met. Folks v. United States, 733 F.Supp.2d 649, 651 (M.D.N.C.

3

2010). In addition, the inquiry is broader than the individual's conduct. Id. (citing United States v. Pregent, 190 F.3d 279, 282-83 (4th Cir. 1999)). "Circumstances that justify early discharge have included exceptionally good behavior that makes the previously imposed term of supervised release 'either too harsh or inappropriately tailored to serve' general punishment goals." Id. (quoting United States v. Lussier, 104 F.3d 32, 36 (2d Cir. 1997)). Neither the passage of time nor full compliance with the terms of supervised release are sufficient bases to warrant early termination. Id. at 652 (collecting cases). But "[a]llocation of scarce resources counsels in favor of terminating supervision in cases . . . where services and oversight are no longer needed." United States v. Lyons, No. CR DKC 13-0282-3, 2020 WL 7769782, at *2 (D. Md. Dec. 30, 2020) (granting motion for early termination of supervised release where the parolee, convicted of a drug trafficking conspiracy and possession of a firearm in furtherance thereof, was transitioning "very well" and he consistently tested negative in random drug testing).

Turning to the § 3553(a) factors and looking at the nature and circumstances of the offense, Hall-Andujar was convicted of conspiring to distribute heroin. He and others trafficked heroin from Baltimore, Maryland to Front Royal, Virginia. From the summer of 2015 through his arrest in April 2018, Hall-Andujar traveled to Baltimore every other day to obtain heroin for distribution in Front Royal. It was estimated that Hall-Andujar distributed a minimum of 1,560 grams of heroin. Pre-Sentence Investigation Report (PSR), ECF No. 53 ¶ 30. The court is aware of the devastation wrought by the distribution of heroin in the Western District of Virginia and this factor weighs against early termination of supervised release.

Regarding his history and characteristics, Hall-Andujar reported a difficult upbringing where he and two of his siblings were physically abused by their stepfather from the time Hall-Andujar was 5 until he was 11. Hall-Andujar attempted suicide when he was 13. Id. ¶ 73. His criminal history includes one count of assault resulting from getting into a physical altercation with another inmate when he was in a regional jail. Id. ¶ 54.

Since being on supervision, Hall-Andujar has done fairly well, as discussed above. However, the recent incident involving his girlfriend raises serious concerns. Although charges were not filed, the allegations of violent conduct made against Hall-Andujar by his girlfriend weigh heavily against early termination of supervision.

Looking at the need for the sentence to provide deterrence to criminal conduct and protect the public, having Hall-Andujar remain on supervised release will provide benefits to both him and the public. Hall-Andujar is a young man, not yet 30 years old, for whom the risk of recidivism remains high.[1] Remaining on supervised release assures that he will be held accountable for his conduct as he continues to adjust to life outside of prison and increases the chances that he will enjoy long-term success when his supervision ends.

Regarding the established sentencing range for the category of Hall-Andujar's offenses, he faced a statutory maximum term of imprisonment of five years. PSR, ECF No. 53 ¶¶ 82, 85. The fact that Hall-Andujar is serving only four years is a neutral factor in determining

---

[1] According to the United States Sentencing Commission, the recidivism rate for offenders who are released from custody between the ages of 26 and 30 is 62.2 percent. U.S. SENT'G COMM'N, RECIDIVISM AMONG FEDERAL OFFENDERS: A COMPREHENSIVE OVERVIEW (2016).

whether his term of supervised release should be terminated early. None of the remaining § 3553(a) factors weigh either in favor or against early termination of supervised release.

Having considered the § 3553(a) factors and the opinion of the probation officer overseeing Hall-Andujar's supervised release, the court **DENIES without prejudice** Hall-Andujar's motion for early termination. To be sure, Hall-Andujar has done a good job of maintaining employment, passing all but one of his drug tests, and complying with the terms and conditions of supervision. However, the court remains concerned about the stability of Hall-Andujar's success given the recent altercation with his girlfriend and his move to a new city. Having him remain on supervised release will provide him with continued structure and accountability, serve to protect the community, and give him a greater chance of long-term success when he is released from supervision.

An appropriate order will be entered.

It is so **ORDERED**.

ENTERED: August 30, 2024

Michael F. Urbanski
Senior United States District Judge